**STATE of Missouri, Respondent,**

v.

**Morris LOCKETT, Appellant.**

**No. 50239.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 29, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 4, 1989.

Application to Transfer Denied Feb. 14, 1989.

James S. McKay, St. Louis, for appellant.

William L. Webster, Atty. Gen., Jared R. Cone, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

The sole remaining issue in defendant's direct appeal consists of a claim that the trial court erred in ruling defendant did not make a prima facie case of racial discrimination in the state's use of peremptory challenges during the trial. All other matters on direct appeal were previously decided by an opinion of this court published on March 25, 1986, which affirmed defendant's conviction on the charge of receiving stolen property and sentence of fifteen years imprisonment. We subsequently denied a motion for rehearing or transfer to the Supreme Court of Missouri.

On June 17, 1986 our Supreme Court ordered the appeal transferred. One of the grounds in the petition to transfer was that the United States Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) on April 30, 1986, eight days after the opinion of this court affirming conviction. On December 16, 1986 our Supreme Court decided the *Batson* holding should not be applied to those defendants, such as Morris Lockett, whose direct appeal was not final at the time United States Supreme Court decided *Batson*. *State v. Lockett*, No. 68186 (Mo. banc Dec. 16, 1986). That court also held

the other issues raised in this appeal were without merit. We therefore deny them. Rule 84.16

On January 13, 1987 two events occurred relating to the present *Batson* issue. On that day the Missouri Supreme Court denied appellant's motion for rehearing. On the same day the Untied States Supreme Court decided that *Batson* had retroactive effect to "all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). Accordingly, our Supreme Court on February 17, 1987, sustained appellant's motion to recall mandate, vacated the affirmance of conviction, reinstated the appeal and remanded to the trial court for a *Batson* hearing.

Because we find the trial court has not complied with the order of the Missouri Supreme Court we remand for further proceedings to conclude the required hearing. The language of the order follows:

On remand, the trial court is ordered to conduct an evidentiary hearing for the purpose of determining the validity of appellant's constitutional claim under *Batson.* After the hearing, the trial court is to render findings of fact and conclusions of law as to whether appellant has established a prima facie case of purposeful discrimination and whether the State has presented a neutral explanation for using its peremptory challenges to strike Black veniremen. The trial court is to certify to this Court its findings of fact and conclusions of law. Upon receipt of the trial court's certified findings and conclusions, this Court will take appropriate action consistent with the requirements of *Batson.*

After remand, trial counsel for appellant was allowed to withdraw and a special public defender entered his appearance on behalf of appellant. Thereafter, the trial court undertook a *Batson* hearing. We summarize the findings of fact which are relevant here:

1. Defense counsel did not ask the thirty-four veniremen to state of what racial group they considered themselves to be a member.

2. Defense counsel objected to the state's use of its peremptory challenges for striking four individuals that she considered to be members of the black race.

3. On the first day of the Batson hearing fifteen members of the original jury panel appeared in court. Two of them stated on the record they were black. One of the two was stricken by the state and the other by defendant.

4. On the second day of the Batson hearing no additional veniremen appeared. Defendant's trial counsel testified.

The two remaining findings are verbatim as follows:

10. That Beth Ferguson's testimony that to her memory verniremen [sic] Brown, Ervin and Fauron were all members of the black race constituted conclusions without foundations. Beth Ferguson testified that she based her opinion on each person's skin color, hair, facial features and voice. However, Beth Ferguson further testified that she was unable to recall specific details of each individual that lead her to reach such a conclusion. *Hence Beth Ferguson's assertions constitute mere conclusions without foundations.*

11. That the defense has failed to establish that there were no other black people who remained on the venire panel after the State exercised its peremptory strikes. This Court does not know that there were no light-skinned black people or people of racially-mixed ancestry who remained on the venire panel because the defense failed to make an adequate record of such at either the original trial or at the evidentiary hearing on the motion. [Our emphasis.]

The conclusion of law was that the defense failed to make a prima facie showing that the state exercised purposeful discrimination in its use of peremptory challenges. The court expressly found it unnecessary that the state provide neutral explanations

of its strikes.[1] Given the failure of the defense to factually establish the racial composition of the jury panel and the jury, the court concluded that defendant's conviction should stand and he should not be granted the relief sought through his motion.

The narrow issue for decision is whether defendant made a prima facie showing by the testimony of defense counsel, if believed, that named venirepersons were black. *See, State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). The question of sufficiency does not depend upon credibility because at the hearing the trial court said for the record, "we know that Beth [trial counsel, the witness] is telling the truth. There's no question about it." The question depends upon manner of proof.

The testimony referred to was that of defendant's trial counsel. She testified from her notes made during the jury selection process and after reviewing the official court transcript of the trial. When asked how she determined the race of the members of the panel of thirty-four she answered, *without objection,* "I looked at them during the time that they were brought into the courtroom. I looked at them at the time that each one of them took their seats in the courtroom. And I looked at them during the State's voir dire and during the defendant's voir dire." When asked if any of the prospective jurors gave the appearance of being members of the black race she answered "[t]here were four of the jurors who I believed were members of the black race based upon their skin color, their facial characteristics, and occasionally by their voice." When asked if she had any doubt they were members of the black race she answered "No. I had no doubt."

She then identified, by name, four black venirepersons stricken by the state. She said there were no other black people on the panel other than the four within the

thirty-one members used for the selection process. She referred to the original trial transcript and her statement on the record that the four venirepersons stricken by the state were black. No other venireperson appeared to be black. Next to the names of four blacks on her venire notes she had written the word "black" as a notation that they were of the black race.

The state offered no evidence. The state's position was that appellant produced one black venireperson who testified she was black, but the testimony of defense counsel was not probative on the issue of blackness of venirepersons in the absence of a "foundation". The comment to the court was that defense counsel "doesn't remember what each specific persons' hair appeared to her to be that led her to conclude they were black." This observation goes to weight not sufficiency. In summary, it was the state's view that the defendant can only prove members of the venire panel were black by questioning such persons either at trial or during a *Batson* hearing. The state did not, however, object to the testimony on the ground of lack of foundation.

The trial court filed its findings and conclusions with the Supreme Court. Thereafter, on April 19, 1988, the Missouri Supreme Court retransferred this appeal for consideration in light of *Batson* and *Antwine.*

In order to succeed, the initial burden lies upon defendant to establish that the prosecutor used peremptory strikes to eliminate members of defendant's race from the venire. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986); *State v. Antwine,* 743 S.W.2d 51, 63–64 (Mo. banc 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). A prima facie showing creates a rebuttable presumption that the prosecutor exercised peremptory challenges in a discriminatory manner. In view of the decision of the trial court to consider the testimony of defense counsel as not probative,

1. The remand order directed the trial court to make a finding of fact "whether the state has presented a neutral explanantion...." No ex-

planations were ever given because they were not thought necessary.

unsupported opinion, no rebuttable presumption resulted.

■ In order to establish a prima facie case of discrimination defendant had the burden of showing that: (1) defendant is black, (2) the prosecutor used peremptory challenges to remove blacks from the venire, and (3) these facts and other relevant circumstances raise an inference that the prosecutor used the practice to exclude the veniremen from the petit jury on account of their race. *Antwine,* 743 S.W.2d at 64.

■ Trial court was asked to and did take judicial notice that defendant was black. This satisfied the first element. This is curious because it suggests blackness may be a matter of observation. The second element was proven when defense trial counsel testified without objection and from her trial notes that the state removed black venirepersons by peremptory challenge. Defense counsel was a competent witness, a witness the court said it believed. Her testimony was probative; the four venirepersons' race was the same as defendant. The testimony is in the nature of first-person observation by the witness. There was no evidence presented to contradict defendant's evidence of the racial composition of the venire. In addition to the hearing testimony, the trial transcript reveals objections to strikes of blacks by the state and name identification of those black venirepersons who were stricken by the state.

We believe the finding of absence of proof of blackness was error. Eyewitness first-person observations of race for purpose of a *Batson* hearing are not merely opinions. No objection was lodged to the testimony on that ground. In substance, defense counsel testified that during the trial she saw four black venirepersons stricken by the state, and she objected then and recalled her observations made at trial. Foundation testimony is not required to render eyewitness testimony probative. The state elicited testimony during cross-examination that indicated that defense trial counsel could not recall specifics such as describing hair, eyes or voice patterns for each person challenged. The answers to these questions would be relevant on the question of weight to be credited. The answers do not, however, render the direct testimony, received without objection, mere conclusions and not probative. Accordingly, the court erred in rejecting the testimony upon a finding that it constituted "mere conclusions without foundations." Such finding is not a legal ground to ignore the testimony.

This court recognized and held in *State v. Robinson,* 753 S.W.2d 36, 38 (Mo.App.1988) that the testimony of defense counsel was sufficient to support a prima facie case. It is for the trial court to assess the credibility of the witness and it may accept or reject all, part or some of the witness's testimony. *Id.* In the present case the court found the testimony of counsel to be truthful. *Robinson* was decided after the trial court entered findings of fact, conclusions of law and reported to the Supreme Court in the present case.

The state argues that defendant has not proven the third element of a prima facie *Batson* case. This position was not reached by the trial court because of the ruling that the second element failed. It remains a matter for the trial court.

We remand to the trial court to complete the Batson hearing ordered by the Supreme Court on February 17, 1987. Because of retransfer the completed findings and conclusions shall be filed with this court. We hold only that the court erred in finding as a fact that the testimony of defendant's trial counsel was not probative on the issue of the racial composition of the venire because such testimony was "mere conclusion without foundation." It follows that the court erred in finding that the defendant failed to make a prima facie *Batson* showing because the testimony was not probative. We do not express any opinion on any other unresolved *Batson* issue. The further remand is not to be construed as an opinion of this court on any other issue than the availability of the observer testimony to prove race, if believed.

REMANDED.

GRIMM, P.J., concurs.

GARY M. GAERTNER, J., dissents.

GARY M. GAERTNER, Judge, dissenting.

I respectfully dissent.

Defendant is a persistent offender, having been previously convicted of murder and burglary. The evidence of his guilt as to the present charge is overwhelming. The present case fulfills Chief Justice Burger's prediction that the retroactive application of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (Burger, J., dissenting), will "lead to a whole host of problems, if not utter chaos." Such problems and chaos must be endured even though the rule announced in *Batson* is not designed to avert the danger of convicting an innocent man. *Id.* 106 S.Ct. at 1742.

The voir dire for defendant's trial was conducted more than three years ago, on April 30, 1985. The evidentiary hearing on defendant's *Batson* claim, which the majority now deems insufficient, took place two and one-half years after his trial. The determination as to whether defendant has made a *prima facie* showing under *Batson* and, if so, whether the State has sufficient neutral explanations for its challenges "essentially requires reconstructing the entire voir dire, something that [would] be extremely difficult even if undertaken soon after the close of the trial." *Id.* It becomes a "virtual impossibility" when the reconstruction is undertaken two and one-half years after defendant's trial. *Id.*

The majority opinion states that it is not holding that defendant made a *prima facie* case under *Batson*. Instead, the opinion remands for a determination as to the third prong of the *prima facie* case analysis established by *State v. Antwine*, 743 S.W. 2d 51, 64 (Mo. banc 1987). And, if a *prima facie* case is established, the trial court is to consider whether the State is able to offer neutral explanations for its challenges. However, it is readily apparent that the result of today's decision will be a new trial for defendant. For, the record of the evidentiary hearing contains the following statement by the prosecutor who tried the case:

> I would have to honestly say, Judge, I don't remember. And I'm not going to come up with racially neutral reasons at this time. I would be fabricating. *I don't remember why I made the selections I made.* [emphasis added]

If any additional proceeding should be undertaken in this case, it should be limited to an instruction that the trial court make a specific finding as to defense counsel's credibility. The majority opinion refers to the trial judge's statement that "we know that Beth [trial counsel the witness] is telling the truth. There's no question about it." This statement was made during the following exchange:

> [Special Public Defender]: Judge, I think this is really bizarre. You know, what we are dealing with here is the sworn testimony by an officer of the Court. The Court: Oh, listen, Mr. McKay, we know that Beth is telling the truth. There's no question about it.
>
> [Prosecutor]: As she perceives it to be.

A careful reading of the entire transcript of the evidentiary hearing, as well as the clear implication of the trial court's findings of fact and conclusions of law, persuades me that the trial judge did not find defendant's trial counsel to be credible. The statement quoted above, when looked at in the context of the entire record, manifests the reluctance of the trial judge to impugn in open court the character of a fellow attorney. Nonetheless, although I believe the statement indicates no more than professional courtesy, it does cloud the trial judge's finding as to credibility. Thus, a remand for this purpose would be appropriate. The trial court, on remand, would be free to reject all of defense counsel's testimony. *State v. Robinson*, 753 S.W.2d 36, 38 (Mo.App., E.D.1988).